## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | |
|---|---|
| KELLEY EDINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-CV-68 RLW |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Kelley Edington brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. For the reasons that follow, the decision of the Commissioner is affirmed.

### I. Procedural History

On December 18, 2012, Kelley Edington filed an application for SSI benefits, alleging disability beginning August 26, 2011. (Tr. 145-50). Her claim was denied at the initial level. (Tr. 62-80). On March 20, 2014, a hearing was held before an Administrative Law Judge (ALJ) and was attended by Plaintiff, her attorney, and a vocational expert. (Tr. 32-61). On April 10, 2014, the ALJ issued a decision denying Plaintiff's claim. (Tr. 13-31). On September 28, 2015, the Appeals Council denied her request for review. (Tr. 1-5). Plaintiff sought review of the Commissioner's decision in district court. On December 1, 2016, United States Magistrate Judge Patricia L. Cohen issued a Report and Recommendation recommending that reversal and remand of the case to the Commissioner for further proceedings. (Tr. 559-66). On December 22, 2016,

United States District Judge Rodney W. Sippel issued an order adopting the Magistrate Judge's recommendation. (Tr. 567-68). A second administrative hearing on Plaintiff's claim was held on August 8, 2017. (Tr. 464-94). On October 24, 2017, the ALJ issued a decision denying Plaintiff's claim, (Tr. 442-63), and on March 29, 2019, the Appeals Council declined to review the ALJ's decision. (Tr. 437-41). Plaintiff again seeks review of the Commissioner's decision in federal district court. The ALJ's decision is the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues that the ALJ's finding that Plaintiff has the residual functional capacity (RFC) to perform a wide range of light work is not supported by and is inconsistent with the opinion of plaintiff's treating advanced practice registered nurse (APRN). Plaintiff argues that the ALJ improperly discounted the APRN's opinion. Plaintiff contends the AJL improperly relied on the opinion of a medical consultant who never examined Plaintiff and was not provided with the opinion of the APRN. Plaintiffs also argues the medical consultant's opinion was inconsistent with other medical opinions in the record. Plaintiff requests that the decision of the Commissioner be reversed and that the matter be remanded for an award of benefits or for further evaluation.

## II.  Evidence Before the ALJ

### A.  Medical Evidence

Relevant medical evidence in the record indicates that on December 5, 2011, Plaintiff was treated at Corning Area Healthcare for follow up for migraines and depression. Her medications, Replax, Robaxin, and Propranolol, were refilled and she was started on Venlafaxine HCl (Effexor) for depression. (Tr. 285-86).

On December 7, 2011, a cervical spine CT scan showed a moderate right paracentral disc protrusion at C5-6 that was mildly indenting the right ventral cervical cord, and a small central disc protrusion at C6-7 that was mildly indenting the ventral cervical cord. (Tr. 344-46).  Plaintiff was again treated at Corning Area Healthcare on January 6, 2012. (Tr. 282-84).

On February 29, 2012, Plaintiff saw Andrew Godbey, M.D., a neurologist, for a consultation, upon referral by Dr. Hutchison. Plaintiff complained of two types of headaches: the first was a left occipital pounding headache associated with photophobia and phonophobia that occurred daily and became severe twice a week; the second a mild daily headache. Physical exam was significant for tenderness over the occipital notch suggestive of occipital neuralgia. Dr. Godbey started her on Gabapentin and indicated that he might refer her to a pain specialist for occipital nerve blocks.

Plaintiff returned to Corning Area Healthcare on March 8, 2012 for follow up. She reported that Dr. Godbey started her on Neurontin (Gabapentin) and she could not take it because of side effects. She also reported increased stress, right arm and wrist pain with numbness, tingling, and decreased grip strength. Impression was depression, migraine, carpal tunnel syndrome (CTS), and ankle sprain. Her dosage of Venlafaxine was increased, and she received an injection of Toradol. (Tr. 279-81).

On April 16, 2012, Plaintiff was treated at Poplar Bluff Regional Medical Center (PBRMC) for right wrist pain and numbness. X-ray was unremarkable. (Tr. 335-36, 379). That same day, Plaintiff saw John H. Judd, M.D., an orthopedist at Bluff Sports Center and Orthopedic Clinic, for treatment of pain and swelling in her right wrist. Dr. Judd indicated probable CTS and scheduled tests and an evaluation by Dr. Choudhary. (Tr. 367).

3

On April 17, 2012, Plaintiff again was treated at Corning Area Healthcare. She reported that her activity was limited due to pain. Her weight was 254 pounds, height was 60 inches (5 feet), and body-mass index (BMI) was 49.60. (Tr. 277-78).

Plaintiff again was treated at Corning Area Healthcare on May 23, 2012. Range of motion in her neck was limited in all directions and motor strength was diminished. Diagnosis was neck pain (cervicalgia), GERD, and fluid overload. (Tr. 274-76).

On July 31, 2012, Plaintiff was seen at Corning Area Healthcare requesting a referral for CTS and indicating that she may have had a seizure a month earlier. (Tr. 268-70).

On August 21, 2012, Plaintiff underwent a left occipital nerve block performed by Yuli Soeter, M.D., upon referral by Dr. Godbey. (Tr. 331-34). The procedure was repeated on September 6, 2012. (Tr. 328-30). Plaintiff reported on September 20, 2012 that her headaches had improved significantly. (Tr. 326-27).

On August 30, 2012, Plaintiff was treated by Jeff Baller, D.P.M., a podiatrist, for a painful left foot. X-rays showed a stress fracture at the base of the fourth metatarsal. Dr. Baller recommended immobilization and placed her in a cam walker. Plaintiff returned to Dr. Baller for follow up on September 20 and October 31, 2012. Dr. Baller added a diagnosis of tenosynovitis of the peroneus brevis tendon. (Tr. 249-54).

Plaintiff again saw Dr. Judd on September 4, 2012, for follow up treatment for wrist pain. She still was having sharp pains with some numbness over the thumb, index, and long finger. Dr. Judd ordered an MRI and EMG/nerve conduction tests and set up an appointment with Dr. Choudhary. (Tr. 361).

Plaintiff returned to Corning Area Healthcare on September 24, 2012, after seeing Dr. Judd. He had referred her to another orthopedist. She reported that her headaches were improving. She

4

was given prescriptions for pain medications to take until her appointment with the orthopedist. (Tr. 266-68).

From October 1-4, 2012, Plaintiff was treated at PBRMC for suicidal ideation. Diagnoses were major depressive disorder, recurrent, posttraumatic stress disorder (PTSD), generalized anxiety disorder, and possible alcohol and/or amphetamine abuse. She had presented at the ER with complaints of recurrent depression and severe anxiety and was voluntarily admitted to the behavioral health unit for treatment. (Tr. 308-25).

Plaintiff went to the PBRMC ER on October 30, 2012 for treatment of a constant and painful headache. (Tr. 301-05). She also saw Dr. Soeter for follow up on October 30, 2012. (Tr. 306-07).

On October 31, 2012, Plaintiff saw Shahid Choudhary, M.D., a neurologist, for an evaluation, upon referral by Dr. Judd. She reported that she was having a problem with pain, numbness, tingling, and swelling in her right hand for the past 4-5 months. She also complained of neck pain following a car accident a year earlier. She indicated that she previously had carpal tunnel syndrome (CTS) in her left hand and underwent surgical release. An EMG showed moderate to severe CTS on the right. Dr. Choudhary recommended surgical release. (Tr. 243-48).

Plaintiff returned to Corning Area Healthcare on November 5, 2012, for follow up for headaches. She complained the headaches were coming more frequently. She was given a Toradol injection. (Tr. 260-62). Plaintiff saw Shahid Shah, M.D. at Corning Area Healthcare on November 7, 2012, for treatment of her headaches, which she reported were continuous. She had been on various pain medications with limited results. Dr. Shah diagnosed tension-type headache and muscle spasm. He prescribed Ibuprofen 800mg, Neurontin, and Methocarbamol 750mg (a muscle

relaxer). (Tr. 258-59). When Plaintiff returned to Corning Area Healthcare on December 5, 2012, her dosage of Effexor for depression was increased. (Tr. 255-57).

An MRI of Plaintiff's right wrist performed on November 21, 2012, showed slight dorsal subluxation of the ulna, some degeneration of the fibrocartilage, a trace edema/cyst formation, and carpal tunnel within normal limit. (Tr. 298-300, 375-77).

Plaintiff saw Dr. Judd on November 26, 2012, for treatment of moderate-to-severe CTS on the right. (Tr. 356). On November 30, 2012, Plaintiff returned to Dr. Judd, who noted that she had positive EMGs for right CTS. He recommended that she schedule a right carpal tunnel release. (Tr. 357).

On December 7, 2012, Dr. Judd performed a right carpal tunnel release on Plaintiff's wrist. (Tr. 293-97, 380-82). Plaintiff returned the next day after her stitches had pulled out. (Tr. 288-92).

Plaintiff saw Dr. Judd on December 10, 2012, for post-op follow up. She was doing well and making good progress. (Tr. 354). She returned to Dr. Judd on December 20, 2012, to have her stitches taken out. She still was making good progress and had good return of sensation. (Tr. 352).

On March 7, 2013, Plaintiff saw Dr. Godbey. He noted that Plaintiff's headaches had improved, but she still was having left occipital pounding headaches. He continued Eddington on Methocarbamol. Diagnosis was occipital neuralgia. (Tr. 434-36).

Plaintiff was treated at Corning Area Healthcare on September 24, 2013, for depression, migraines, CTS, GERD, and anxiety. She was continued on her medications. (Tr. 393-95).

On December 29, 2015, Plaintiff was seen by Dr. Kim Chul at Westwook Medical Clinic for a disability evaluation at Social Security's request. She reported a history of low back pain, headaches, numbness and swelling in both hands, pain and swelling in her feet when on them for extended periods, weight problems, and a long history of mental health issues. On exam, Dr. Chul

6

found Plaintiff's blood pressure to be 178/100 and she weighed 257.4 pounds. There was decreased range of motion in Plaintiff's right shoulder, right elbow, right wrist on dorsiflexion, both knees, right hip on forward flexion, cervical spine and low back. There was 4/5 muscle weakness in the right lower extremity. The right shoulder was tender at the frontal and superior aspect and supination and pronation of the right elbow to 60 degrees gave her pain in the right upper arm. She had tenderness and pain in her neck and lower back. She was able to bear weight in the right leg and the left leg for about 4 seconds. She was able to walk on toes but walking on heels gave her pain at the heels on both feet. The neurological exam showed absent deep tendon reflex at the bilateral knees and ankles, a moderate degree of decreased sensation for pain on right upper and lower extremities, and a moderate degree of decreased sensation for cold in the right leg. Dr. Chul diagnosed pain in the neck with degenerative joint disease and old injury, chronic lower back pain radiating to right leg, degenerative joint disease and/or lumbar disc herniation with radiculopathy, migraine headaches, carpal tunnel syndrome in bilateral hands, chronic pain on bottom of feet with probable plantar fascitiitis, morbid obesity, mental problems including anxiety, depression, and PTSD. (Tr. 804-12).

On September 7, 2016, Plaintiff presented to 1st Choice Healthcare clinic to establish care. She was seen by Danna Guntharp, APRN, to follow up for an abdominal mass and for right shoulder pain. Plaintiff reported that she had lost her insurance and had been unable to obtain care. On exam, Ms. Guntharp noted Plaintiff's weight to be 260 and her blood pressure was 160/100. She had decreased right grip strength on neurological exam. Ms. Guntharp diagnosed shoulder pain, depression, hypertension, obesity, abdominal mass, migraine, GERD, bicipital tendonitis of the right shoulder, and pelvic mass. She ordered x-rays of Plaintiff's shoulder, gave her an injection of Decadron, started her on Wellbutrin for depression, Lisinopril-Hydrochlorothiazide for

hypertension, and Mobic for right shoulder pain, and wrote her refills for Methocarbamol and Sumatriptan for migraines and Omeprazole for GERD. (Tr. 901-05).

Plaintiff returned to Ms. Guntharp on October 10, 2016, reporting that she had been unable to tolerate Lisinopril/HCTZ due to dizziness and nausea. She reported shortness of breath with exertion and wanted help with weight loss. On exam, Plaintiff weighed 264 and her blood pressure was 138/80. Guntharp assessed her with anemia, hypertension, morbid obesity and pre-diabetes and gave her a B12 injection. (Tr. 885- 88).

On November 8, 2016, Plaintiff was seen by Ms. Guntharp for a weight check. At that time, she weighed 258 pounds. (Tr. 880-82).  Ms. Guntharp gave Plaintiff a B12 injection on November 14, 2016 for anemia. (Tr. 878).

Ms. Guntharp completed a "Medical Source Statement-Physical" on May 9, 2017, indicating that Plaintiff's maximum ability to lift/carry was limited to 10 pounds, her maximum ability to stand/walk was limited to 15-30 minutes without a break, her maximum ability to sit was limited to about 15-30 minutes continuously and to 4 hours in an 8-hour workday, and that her maximum ability to reach in all directions, handle and finger was limited to occasionally. Ms. Guntharp indicated that Plaintiff would need an option to sit or stand/walk at will and could not complete a normal workday, workweek or maintain a full-time work schedule. (Tr. 956-58).

Ms. Guntharp also completed a mental assessment form indicating that Plaintiff had moderate limitation (i.e. would consistently have problems) in remembering locations and work-like procedures, interacting appropriately with the general public, and getting along with coworkers. Ms. Guntharp further noted that Plaintiff would have marked limitations (or limitations to a point that would seriously interfere with performance of work activity) in the areas of completing a normal workday/workweek, performing at a consistent pace without an unreasonable

number of and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, and traveling in unfamiliar places or using public transportation. (Tr. 959- 61).

Dr. Meredith Sherrill was retained as a medical expert by Social Security, and on May 27, 2017, noted that Plaintiff's medical impairments include extreme obesity (BMI> 40) and depressive disorder. Dr. Sherrill opined, based on her review of Plaintiff's medical records, that she could continuously lift/carry 10 pounds and 20 pounds occasionally, could stand/walk 4 hours in an 8-hour workday but could stand no more than about 5 minutes or walk more than 15 minutes continuously, could sit 8 hours in an 8-hour workday and 8 hours continuously. However, Dr. Sherrill noted that Plaintiff would be changing positions to relieve pain in her feet and swelling in her lower extremities. She noted that Plaintiff had pain in her lower back, feet and wrists, accompanied by swelling in her feet at times, and numbness and tingling in her wrists. She noted that Plaintiff had a history of carpal tunnel syndrome in both wrists, status post-surgery. Dr. Sherrill further opined that Plaintiff could continuously reach, handle, finger, push or pull with both hands, and could frequently finger and feel. She noted that Plaintiff was right-hand dominant and had limited sensation in her wrists (right greater than left) even after surgical release of carpal tunnel. (Tr. 962-72).

## B. **Testimony at Administrative Hearing**

### 1. **Plaintiff's testimony**

Plaintiff testified at the second administrative hearing in August 2017 that she weighs 235 pounds, is 5'1" tall, and has a tenth-grade education. She testified she has problems with her blood pressure and swelling in her legs and hands. She testified that she cannot hold or grip anything

and has had surgery on each hand. She testified she can lift a gallon of milk with her dominant right hand, but she might have to use her other hand to keep from dropping it.

Plaintiff testified she lives with her son and his dad, both of whom help her with grocery shopping about once a month. She testified she can stand while shopping for about an hour because her leg swells. She also testified she has difficulty buttoning her clothes and cannot bend and tie her shoes. Plaintiff testified she cannot use a computer because of pain. She testified she has pain in her shoulder and cannot reach her right arm overhead or straighten it at the elbow, and that she also has pain in her neck, which is aggravated when she moves her head up or to the side. Plaintiff testified she gets migraine headaches about three times a week and needs to lie down in a dark room, but that she feels better after an hour or two. She testified that her vision also gets blurry at times. (Tr. 467-75).

Plaintiff also testified that she has problems with her weight. She testified she suffers from pain in her knees and feet, and her back hurts when she stands too long. She testified she can stand for 10 minutes before her back starts hurting, and she can walk to the mailbox and back, but it takes her three or four minutes. Plaintiff testified that her Methicillin-resistant Staphylococcus aureus (MRSA) sometimes causes her to break out in sores and blisters. She also testified that she has problems with anxiety and depression, and her anxiety triggers her headaches. (Tr. 475-80).

### 2. Testimony from Vocational Expert

Janice Hastert, a vocational expert (VE), also testified at the hearing. The ALJ asked the VE if there is work in the economy for an individual with the same age, education, and work background as Plaintiff who is limited to lifting 20 pounds occasionally and 10 pounds frequently, who can stand or walk two hours in an 8-hour workday, sit for six hours in an 8-hour workday, frequently climb stairs and balance, occasionally climb ropes, scaffolds, ladders, occasionally

10

stoop, crouch, kneel, and crawl, frequently feel and finger, and must avoid prolonged exposure to unprotected heights. The VE answered that such an individual could perform work as an egg processor (DOT 559.687-034), production checker (DOT 699.687-014), or surveillance system monitor (DOT 379.367-010). (Tr. 488-90).

## III. The ALJ's Decision

The ALJ evaluated Plaintiff's claim for benefits according to the familiar five-step analysis prescribed by the Social Security regulations. 20 C.F.R. § 416.920(a)-(f). In a decision dated October 27, 2017, the ALJ found Plaintiff has the following severe impairments: disorder of the back, edema, headaches, status post carpal tunnel surgery, and obesity. (Tr. 447). The ALJ found that Plaintiff has the RFC to perform light work, except that she can stand and walk for only 15 minutes at a time, she frequently can climb stairs, but only occasionally climb ropes, scaffolds, or ladders, she occasionally can stoop, crouch, kneel, and crawl, she frequently can balance, she frequently can feel and finger, and she must avoid unprotected heights. (Tr. 449). The ALJ found Plaintiff is unable to perform her past relevant work.

Based on vocational expert testimony and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an egg processor (DOT 559.687-034), production checker (DOT 699.687- 014), or surveillance system monitor (DOT 379.367-010). According to the ALJ, Plaintiff has not been disabled since December 18, 2012, the date her application was filed. (Tr. 445-55). The ALJ's decision stands as the final decision of the Commissioner and it is from this decision that Plaintiff seeks judicial review.

11

## IV. Legal Standard

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.   If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) meets or equals one of the listed impairments, she is conclusively disabled.   At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the

Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, a finding of "disabled" is appropriate.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585–86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the

13

Commissioner's decision. Coleman, 498 F.3d at 770; Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003) ("We are not permitted to reverse 'merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.'") (quoting Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001)).

## V.    Discussion

Plaintiff argues the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence in the record. More specifically, she faults the ALJ for not giving controlling weight to the opinion of Plaintiff's treating nurse practitioner, and for relying on the opinion of a non-examining, consulting physician.

The ALJ concluded Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with some additional limitations. Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).   The AJL found Plaintiff has the following additional limitations: Plaintiff can stand or walk for six hours out of an eight-hour workday, "except [Plaintiff] could only stand or walk for 15 minutes at a times.   She could frequently climb stairs but only occasionally climb ropes, scaffolds, or ladders.   She could occasionally stoop, crouch, kneel or crawl.   She could frequently balance.   [Plaintiff] would be limited to frequent feeling and fingering. She must avoid unprotected heights."[1]   (Tr. 449).

RFC is what a claimant can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945.   The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.   SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).   "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner."   Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).   It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his or her limitations. Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Pearsall, 274 F.3d at 1217.   According to the Eighth Circuit, "[u]ltimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (quoting Combs, 878 F.3d at 646); see also Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (ALJ's RFC assessment must be supported by medical evidence).   Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (some medical

---

[1]The Eighth Circuit recognizes that "'[l]ight work' requires that a claimant be capable of standing or walking for a total of six hours out of an eight-hour workday." Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995).

evidence must support the determination of the claimant's RFC). An ALJ's RFC determination should be upheld if it is supported by substantial evidence in the record. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

It is the claimant's burden to establish his or her RFC. Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). However, the ALJ has an independent duty to develop the record, despite the claimant's burden. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The ALJ must neutrally develop the facts."). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (quoting Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)). In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. See 20 C.F.R. §§ 404.1519a(b), 416.945a(b).

It is clear from his written decision that the ALJ considered the medical records before him, as well as Plaintiff's testimony and her described daily activities. He also considered opinion evidence from a treating APRN and a non-examining, consulting physician.

The ALJ summarized Plaintiff's treating APRN, Danna Guntharp, opinion as follows:

Danna Guntharp opined [Plaintiff]'s shoulder pain, migraine headaches, and history of carpal tunnel syndrome limited her to lifting and carrying no more than 10 pound frequently and that [Plaintiff] would be unable to stand or walk for more than 30 minutes at a time without a break. Ms. Guntharp further opined the claimant could sit for a total of four hours daily but would need a break from sitting every 15 to 30 minutes. It was further noted, based entirely on the claimant's subjective report, that reaching, fingering, and handling were limited to occasional on the left side and were completely precluded on the right. Otherwise, Ms. Guntharp opined the claimant could occasionally perform the full range of postural functions. She opined the claimant must avoid concentrated exposure to extreme temperatures.

...

16

> [R]egarding [Plaintiff]'s mental functioning … [Ms. Guntharp] opined the claimant
> had few moderate and mild limitations related to understanding and memory,
> sustained concentration and persistence, social interaction, and adaptation. She
> even opined the claimant had marked limitations in the ability to complete a normal
> workweek, accept instructions and respond appropriately to criticism, get along
> with peers, and travel to unfamiliar places.

(Tr. 451-52).

The ALJ assigned little weight to Ms. Guntharp's opinion. He noted that she did not

provide facts to support some of her opinions; and that at least some of the limitations expressed

in Ms. Guntharp's statement were attributed to the claimant herself, which suggests that

components of her opinion were based at least in part on the Plaintiff's subjective reports rather

than on objective clinical evidence. In regard to Ms. Guntharp's opinion as to Plaintiff's mental

functioning, the ALJ found Ms. Guntharp's opinion was contrary to other medical evidence in

record, "which fails to provide any objective support for the marked and moderate limitations

expressed in Ms. Guntharp's statement." (Tr. 452).

The ALJ also noted that under 20 C.F.R. §§ 404.1513 and 416.913(a), Ms. Guntharp is not

an acceptable medical source.

> As a nurse practitioner, Ms. Guntharp is not an acceptable medical source and these
> opinions, standing alone, cannot constitute documentation of severe or disabling
> vocational limitations. For this reason, too, Ms. Guntharp's opinions cannot be
> given significant weight, notwithstanding the other evidentiary discrepancies
> discussed above.

(Tr. 452).

The ALJ also considered the medical opinion of Meredith Sherill, M.D., an independent

medical expert, who the ALJ engaged to further develop the medical opinions in the case. (Tr.

452). The ALJ summarized Dr. Sherill's medical opinion as follows:

> Despite the claimant's impairments, Dr. Sherill opined the claimant still retained
> significant functioning, including the ability to ambulate, and showed improvement
> with treatment. As for specific functions, Dr. Sherill opined the claimant could

17

occasionally lift or carry up to 20 pounds and up to 10 pounds more frequently. These functions were allegedly limited by wrist pain and effects of obesity. She further opined the claimant could sit for eight hours at a time, stand for five minutes at a time for a total of four hours in a workday, and walk for 15 minutes at a time for a total of 4 hours in a workday. She opined the claimant would need to change positions to relieve pain and swelling in the lower extremities. These exertional limitations relate to the claimant's obesity, related back pain, and status post carpal tunnel release.

Dr. Sherill also opined the claimant experienced manipulative limitations, specifically that she could only frequently finger and feel. She further opined the claimant could only frequently operate foot controls. As for environmental limitations, Dr. Sherill opined the claimant could tolerate occasional exposure to unprotected heights but was otherwise unlimited.

(Tr. 452).

The AJL gave Dr. Sherill's opinion significant weight.  He found it to be generally consistent with the medical evidence in the record.  The ALJ noted that Dr. Sherill is qualified by training, licensure, and experience to render medical opinions under 20 C.F.R. §§ 404.1513 and 416.913(a).  The ALJ, however, did not adopt Dr. Sherill's opinion wholesale.  He incorporated some additional environmental and postural limitations in his RFC determination based on evidence developed at the hearing level, including the claimant's hearing testimony.  (Tr. 452).

Plaintiff first argues it is was error for the ALJ to have discounted Ms. Guntharp's opinion based on the fact she did not provide facts in her medical source statement to support her opinions. Citing to Cox v. Barnhart, 345 F.3d 606 (8th Cir. 2003), Plaintiff argues a treating source's opinion cannot be discounted based simply on what he or she included in the medical source statement. Plaintiff contents that the bases for Ms. Guntharp's specific opinions are contained in her numerous treatment notes, as well as the larger medical record.

In his decision, the ALJ noted that Ms. Guntharp did not provide facts to support some of her opinions.  The regulations authorize an ALJ to consider the degree to which a source explains his or her opinion and provides supporting evidence for his or her conclusions.  20 C.F.R. §

18

416.927(c)(3) (2007). In the case cited by Plaintiff, Cox v. Barnhart, the Eighth Circuit wrote "conclusory statements by a doctor, if unsupported by the medical record, do not bind the ALJ in his disability determination." 345 F.3d at 608 (citing Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986)). Setting aside the fact that Ms. Guntharp is not a doctor, contrary to Plaintiff's assertion, the bases for many of Ms. Guntharp's opinions are not contained in her treatment notes.

For example, Plaintiff was first seen by Ms. Guntharp on September 7, 2016, at which time Plainitff complained of shoulder pain. (Tr. 901). Ms. Guntharp ordered an X-ray of Plaintiff's shoulder, the results of which were normal. (Tr. 913). Plaintiff was then seen by Ms. Guntharp at least three more times over the course of the next few months, and Plaintiff's shoulder pain and treatment thereof are not mentioned in Ms. Guntharp's treatment notes. As the Commissioner points out, when Ms. Guntharp saw Plaintiff a few months prior to her medical source statement, Plaintiff appeared in no acute distress and received treatment for only a sinus infection. (Tr. 874-76). Furthermore, Ms. Guntharp acknowledged in her opinion that her office had "not worked up" Plaintiff's alleged history of neck and back pain, although she opined that Plaintiff's functional abilities were limited as a result of these impairments. (Tr. 958). Moreover, Plaintiff is alleging disability for a period of several years, while Ms. Guntharp indicated in her opinion that the limitations she assessed covered a period of only three months. (Tr. 178, 445, 958). It is apparent from the ALJ's decision, that in discounting Ms. Guntharp's opinion, he considered Ms. Guntharp's treatment notes, as well as other medical evidence in the record. It was not improper for the ALJ to have discounted some of Ms. Guntharp's opinions, at least in part, because they were not adequately explained or supported in the medical records.

Second, Plaintiff argues the fact that Ms. Guntharp may have relied in part on Plaintiff's subjective reports is not a legally sufficient reason for discounting her opinions. Plaintiff argues

that under Eighth Circuit law, an "ALJ's rejection of a medical opinion because it was based on the claimant's own complaints" is improper "because '[a] patient's report of complaints, or history, is an essential diagnostic tool.'" (ECF No. 11 at 13) (quoting Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997)); see also Brand v. Sec'y of Dep't of Health, Ed. & Welfare, 623 F.2d 523, 526 (8th Cir. 1980) ("[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints").

While a medical diagnosis may rely on a patient's subjective complaints, this is valid factor for an ALJ to consider when weighing opinion evidence. In a more recent case, the Eighth Circuit held that an ALJ properly found an opinion unpersuasive in part because it "seemed to be based on [the claimant]'s subjective complaints rather than any objective medical evidence." Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016) (citing Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014)). Here, as the Commissioner points out, Ms. Guntharp admitted that she based the assessed right shoulder limitations on Plaintiff's own reports regarding pain. (Tr. 451, 957). Ms. Guntharp also acknowledged that her opinion regarding Plaintiff's stamina was similarly based on Plaintiff's own statement that she could not sit for long periods due to neck and back pain. (Tr. 451, 958). And, as stated above, Ms. Guntharp acknowledged that her office had not worked up Plaintiff's complaints of neck and back pain. (Tr. 958). It was not erroneous for the ALJ to have considered the fact that Ms. Guntharp may have relied, in part, on Plaintiff's subjective reports, especially when Ms. Guntharp did not treat Plaintiff for her neck or back, and she provided very little treatment for her shoulder.

Finally, Plaintiff argues the ALJ erroneously discounted Ms. Guntharp's opinion because she is an APRN. Plaintiff disputes the ALJ's statement that "[a]s a nurse practitioner, Ms. Guntharp is not an acceptable medical source and these opinions, standing alone, cannot constitute

20

documentation of severe or disabling vocational limitations." (Tr. 452). Plaintiff argues this is a misstatement of the applicable law.

Plaintiff acknowledges that Social Security regulations have been revised to include APRNs as an acceptable medical source, but these regulations do not apply in this case because Plaintiff's claim was filed prior to March 27, 2017. See 20 C.F.R. § 416.902(a)(7) (2017).[2] Plaintiff admits that as an APRN, Ms. Guntharp was not an "acceptable medical source," and the ALJ should have weighed her opinion under the old regulations and relevant case law. But, according to Plaintiff, even under the old law, the ALJ did not give Ms. Guntharp's opinion proper weight.

Plaintiff points out that under the law prior to March 27, 2017, Ms. Guntharp was considered an "other medical source," "who is capable of giving an opinion about Plaintiff's limitations." (ECF No. 11 at 14). Social Security Ruling 06–3p provides:

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions. . . .

[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation   for his or her opinion.

SSR 06-3p, 2006 WL 2329939 (Aug. 9. 2006) (rescinded 82 FR 15263-01 (Mar. 27, 2017)).

---

[2]An advanced practice nurse can be considered an acceptable medical source only for claims filed on or after March 27, 2017. 20 C.F.R. § 416.902(a)(7) (2017). Plaintiff filed her claim in this case on December 18, 2012 (Tr. 74).

Plaintiff argues the Eighth Circuit has found it to be reversible error where the ALJ, as here, wrongly discounted a medical source because that source was not an "acceptable" source. (ECF No. 11 at 14-15) (citing Shontos v. Barnhart, 328 F.3d 418, 426–27 (8th Cir. 2003)). And that the Eight Circuit has recognized that a nurse practitioner can be treated as a treating source when working as part of a medical team with a doctor, as Plaintiff argues is the case here. (ECF No. 11 at 14-15) (citing Lacroix v. Barnhart, 465 F.3d 881, 886 (8th Cir. 2006)).

In the case Lacroix v. Barnhart, the Eighth Circuit affirmed an ALJ's decision denying benefits, explaining that an opinion from a nurse practitioner could not be considered a treating source opinion where the record contained no report by an acceptable medical source that could confer treating-source status to the nurse's opinion. 465 F.3d at 886-87 (finding therapists and nurse practitioner, who comprised claimant's treatment team, were not entitled to greater weight than opinions of non-treating consultants); cf. Wilson v. Astrue, No. 4:09CV1468 TCM, 2011 WL 903084, at *13 (E.D. Mo. Mar. 15, 2011) (explaining that a notation of "reviewed – ok" by a doctor and a referral to a doctor for a pap smear did not establish the existence of a treatment team sufficient to confer treating-source status on the opinion of a nurse practitioner). Here, Plaintiff asserts that "Guntharp works as an APRN at 1st Choice Healthcare along with the doctors who practice there." (ECF No. 11 at 15). But Plaintiff fails to cite evidence in the record to show that Ms. Guntharp coordinated her care with a doctor or other acceptable medical source, or that she was even part of a medical team with a doctor.

As discussed above, the ALJ did not discount Ms. Guntharp's opinion out of hand merely because she was an APRN. The ALJ also found her opinion was not adequately explained; it was inconsistent with the medical records, including her treatment notes; and it was based on Plaintiff's

subjective complaints.   Plaintiff's arguments regarding the weight the ALJ assigned Ms. Guntharp's opinion are without merit.

Plaintiff also faults the ALJ for relying on the opinion of medical consultant, Dr. Sherill, who never examined Plaintiff.   Plaintiff seems to suggest that Dr. Sherill's opinion is faulty because she received only "some" of the relevant medical records for review.   (ECF. No. 11 at 15). As the Commissioner points out, this suggestion is not supported by the record, which indicates that Dr. Sherrill received more than 300 pages of medical evidence.   (Tr. 240-436, 802-920, 962). Plaintiff also argues it is significant that Dr. Sherill was not provided with Ms. Guntharp's medical opinions.   Plaintiff, however, cites no authority for the proposition that a medical expert must review all other opinions before she can formulate her own opinion from the medical record.

Plaintiff also asserts, without providing details or explanation, that Dr. Chul's December 2015 opinion, (Tr. 804-12), supports Ms. Guntharp's opinion and is inconsistent with Dr. Sherill's opinion.   Dr. Chul, however, did not offer an opinion regarding Plaintiff's functionality and ability to function in the workplace, instead she did a disability evaluation almost a year and a half prior to Ms. Guntharp's and Dr. Sherill's reports.   For these reasons, it is difficult to compare Dr. Chul's report with Ms. Guntharp's and Dr. Sherill's opinions.   But even if Dr. Sherill's opinion was inconsistent in some way with Dr. Chul's evaluation, the Court must affirm the ALJ's decision if there is substantial evidence on the record as a whole to support the ALJ's conclusion.   Pearsall, 274 F.3d at 1217 (citing Young, 221 F.3d at 1068).   Weikert, 977 F.2d at 1252 ("[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision.").

Here, the ALJ did not just rely on Dr. Sherill's opinion.   While he found it to be generally consistent with the medical evidence in the record, as discussed above, he incorporated some

additional environmental and postural limitations in his RFC determination based on evidence developed at the hearing level. (Tr. 452). Likewise, the ALJ did not reject Ms. Guntharp's opinion entirely. Although the ALJ found Plaintiff slightly less limited in her ability to lift and carry items occasionally, he agreed with Ms. Guntharp that she could lift and carry only up to 10 pounds frequently. The ALJ also generally agreed that Plaintiff could only occasionally perform most postural activities. (Tr. 449, 957). And the ALJ found Plaintiff to be more impaired in her ability to stand and walk. The ALJ concluded Plaintiff could only stand or walk for 15 minutes at a time, while Ms. Guntharp opined Plaintiff could stand or walk for 15-30 minutes at a time. (Tr. 958).

In this case, the ALJ considered medical records before him, with consideration of the limitations and restrictions imposed by the combined effects of all of Plaintiff's impairments. The ALJ considered Plaintiff's testimony and her described daily activities. He also considered and evaluated opinion evidence from a treating APRN and a non-examining, consulting physician. In sum, after reviewing the record in this case, the Court finds the ALJ properly explained the basis for his RFC determination, and substantial evidence in the record as a whole supports the ALJ's findings and conclusion.

## VI.    Conclusion

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 24th day of November, 2020.